IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MATTHEW LIEBER and ERIN LIEBER, *individually and as representatives of the estate of Jackson Lieber, Deceased,* | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-cv-181-DII |
| ESTEBAN GOMEZ-SANCHEZ, | § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is the Motion for Summary Judgment filed by Defendant Esteban Gomez-Sanchez ("Gomez"). (Dkt. 25). Plaintiffs Matthew Lieber and Erin Lieber, individually and as representatives of the estate of Jackson Lieber, Deceased, ("Plaintiffs") filed a response, (Dkt. 27), to which Defendant replied, (Dkt. 29). Having considered the parties' submissions, the record, and the applicable law, the Court will grant Defendant's motion for summary judgment.

## I. BACKGROUND

On January 18, 2023, at approximately 3:00 PM, Jackson Lieber ("Lieber") was involved in a vehicle collision in Liberty Hill, Texas. (Dkt. 1, at 3). Lieber went to a nearby property, where an argument between Lieber and residents of the property ensued. (*Id.*). The residents used physical force to restrain Lieber. (*Id.*). A resident, Denise Preece, also called 911 to report a person trespassing on her property who was chasing and screaming at her husband and son. (Dkt. 27-1, at 8). Preece told the 911 dispatcher that Lieber was attacking residents of the property and that the residents had fired warning shots to subdue Lieber; the 911 dispatcher in turn relayed information about the situation to the responding officers. (Dkt. 27-1, at 8). Responding police officers from the Williamson County Sheriff's Office and Liberty Hill Police Department, including Gomez, arrived

1

afterward. (Dkt. 1, at 4). Gomez was carrying a rifle. (Dkt. 27-1, at 8). Gomez was informed by residents of the property that Lieber was "fucked up on some kind of shit," "combative as shit," and "trying to commit suicide." (Dkt. 27-3, at 9).

At the time Gomez arrived, Lieber was lying on the ground. (Dkt. 27-1, at 7). Lieber was unarmed. (*Id.*). Lieber had blood on his face, which was visible to Gomez when he came up to Lieber and started issuing commands. (Dkt. 27-2, at 18). A civilian witness informed Gomez "[h]e don't have a gun" and Gomez repeated back that Lieber did not have a gun. (Dkt. 27-1, at 7). Gomez approached Lieber lying on the ground, and Gomez had his rifle in a ready position and loaded. (*Id.*, at 8-9). Gomez engaged Lieber by saying "let me see your hands, you're gonna get . . ." and Lieber grabbed a golf ball and threw it toward Gomez. (*Id.*, at 9). Then, Lieber got up and started running toward Gomez. (*Id.*). Gomez stepped back while pointing the rifle at Lieber and then fired two rounds from his rifle striking Lieber in his torso. (*Id.*) Lieber died later that day at St. David's Round Rock Hospital. (Dkt. 1, at 4).

Gomez said at the time that he shot because Lieber "was running at me" and "I couldn't tell if he was reaching for something in his pocket or down by his waist, so I just shot." (*Id.*, quoting (Dkt. 23-6)). Gomez also testified at his deposition that it was also a "contributing factor" toward deciding to shoot Lieber that Lieber was close enough to him that he "could have easily taken [his rifle] away from him." (Dkt. 27-2, at 38).

Defendant alleges additional facts in the Motion concerning Lieber's behavior leading up to the shooting, the car crash involving Lieber, and the details of the altercation between Lieber and the residents of the property. (Dkt. 25, at 4-6). Plaintiffs object to Defendant's inclusion of "all pieces of evidence that were not within the scope of Gomez's knowledge at the time of the shooting." (Dkt. 27, at 3). The Court therefore focuses on undisputed evidence about the

interactions between Lieber and Gomez after Gomez arrived at the scene. The Court also considers Gomez's body camera video footage, which Plaintiffs do not dispute. (*See* Dkt. 27, at 3-4).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2021).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Also, a court gives weight at the summary judgment stage to video recordings taken at the scene. *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* Even when considering a qualified immunity defense, however, the Court must view the evidence in the light most favorable

to the non-movant and draw all inferences in the non-movant's favor, *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III. DISCUSSION

Qualified immunity requires a two-part inquiry. A court assesses whether a defendant violated a constitutional right, and a court looks to whether the right at issue was clearly established at the time. *Morrow v. Meacham*, 917 F.3d 870, 874 (5th Cir. 2019). Courts have discretion to decide which of the two prongs to reach first, and if one prong is not met, then a court need not reach the other prong. *Id; see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

To the first prong, whether the officer violated a constitutional right, the Court is to determine whether the officer's use of force was objectively reasonable, which is a fact-specific inquiry. To prove an excessive-force claim under the Fourth Amendment, Plaintiffs must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citation omitted). Plaintiffs have shown that they suffered an injury which resulted from Gomez's use of force, and this Court's analysis focuses on the excessiveness and objective unreasonableness inquiries.

Deadly force is clearly excessive and objectively unreasonable unless "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Romero*, 888 F.3d at 176 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). In other words, "[a]n officer's use of deadly force is not unreasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2023)). The question of whether a suspect's actions "amount[ed] to threatening behavior" is a "question of

4

law." *Id.* at 1090. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

The Court finds that, based on the undisputed facts and circumstances, Gomez had reason to believe that Lieber posed a threat of serious harm. The undisputed evidence shows Lieber was running toward Gomez quickly and from close proximity. (*See* Dkt. 23-6 (body camera footage showing Lieber close to Gomez when he shot); *see also* Dkt. 27-1, at 8 (Plaintiffs' expert describing that Lieber "charged at" Gomez)). Defendant testifies that his split-second decision was based at least in part on the fact that Lieber could have grabbed his rifle. (Dkt 27-2, at 28 (Gomez testifying that Lieber was "close enough to where if he would have reached out, he could have grabbed my gun"). Plaintiffs do not dispute in their response that Lieber was in reaching distance from Defendant at the time, and video evidence confirms as much. (Dkts. 27, 23-6). Also, Gomez had reason to believe Lieber had been behaving violently and combatively toward the residents before he arrived, based on the undisputed evidence that the residents had given Gomez some context as to the physical altercation between them. (Dkt. 27-1, at 9 (resident had told Gomez that Lieber was "combative as shit" and "trying to commit suicide")). These circumstances made it such that a reasonable officer could in Gomez's circumstances believe that Lieber posed a threat of serious harm. As such, the Court finds that Gomez did not violate Lieber's constitutional rights. Having found as such, the Court does not reach the second prong of the qualified immunity analysis. *See Tolan*, 572 U.S. at 656.

Plaintiffs argue that Defendant's perception of a risk of physical harm was objectively unreasonable because Defendant had been informed that Plaintiff was unarmed, and because Plaintiff did not have anything in his hands when he charged Defendant. (Dkt. 27, at 8). But the

qualified immunity caselaw does not distinguish reasonable fear of physical harm based *solely* on whether a suspect was unarmed. Rather, while "whether the suspect is armed is often the key factor in determining if a threat to the officer justifies the use of deadly force," there are other factors, namely whether a suspect is "turning or moving away from the officer," that this Court must consider. *Poole*, 13 F.4th at 425. Here, that Lieber was undisputedly charging toward Gomez at the time that Gomez shot him distinguishes this case from cases where the Fifth Circuit has declined to grant qualified immunity. *Compare Poole*, 13 F.4th 420 (upholding denial of summary judgment on qualified immunity grounds where material disputes included that "a jury could find that [defendant officer] shot [plaintiff] in the back"), and *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (affirming district court decision declining qualified immunity at summary judgment phase where a reasonable jury could have found that plaintiff was "facing away from the officer . . . [and] was unaware of the officer's presence.").

Defendant relies on two recent Fifth Circuit cases, which are also instructive on this point. In *Guerra v. Bellino*, 703 F. App'x 312, 317 (5th Cir. 2017),[1] an unarmed plaintiff was running toward the defendant officer. The Fifth Circuit found that the first prong of the qualified immunity test was not met, finding it was reasonable for an officer to believe that the plaintiff posed an imminent physical threat because he was "charging toward [the defendant] immediately before the shooting" and "the film conclusively shows that [plaintiff] ran toward [defendant]." 703 F. App'x, at 317–318. In *Guerra*, too, the Fifth Circuit did not find that the fact that the plaintiff was unarmed made the officer's fear of imminent physical danger unreasonable. Plaintiffs seek distinguish *Guerra* because there, the defendant officer did not know that the plaintiff was unarmed. (Dkt. 27, at 7). But a

---

[1] *Guerra* is an unpublished decision, but other district courts in this Circuit have cited it as persuasive authority. *E.g., Renfroe v. Parker*, No. 3:18-CV-609-DPJ-LRA, 2019 WL 2410084, at *4 (S.D. Miss. June 7, 2019), amended in part, No. 3:18-CV-609-DPJ-LRA, 2019 WL 3806641 (S.D. Miss. Aug. 13, 2019), aff'd, 974 F.3d 594 (5th Cir. 2020), and aff'd, 974 F.3d 594 (5th Cir. 2020) ("[A] weapon is not necessary to create the risk of serious physical harm.").

reasonable officer in Gomez's situation could have believed Lieber may *become* armed by taking his gun, and as previously discussed, this Court is to give allowance to the split-second decision-making of officers perceiving potential risks of serious physical harm. *Graham*, 490 U.S. at 396–97.

So too, Defendants cite, and Plaintiffs do not discuss, *Romero*, 888 F.3d at 175, where the unarmed plaintiff came toward the defendant officer after multiple warnings to stay back and keep his hands up, and the defendant officer shot him. The Fifth Circuit found that the officer's belief that the plaintiff posed a risk of serious harm was reasonable. As such, *Romero* further instructs that a reasonable officer in Gomez's circumstances, where Lieber was charging toward him within reach of his gun at the moment he shot, would have reasonable fear of serious physical harm.

Plaintiffs cite *Palma v. Johns*, 27 F.4th 419, 434 (6th Cir. 2022), for the proposition that deadly force is not justified "whenever a suspect charges at an officer or defies an order." (Dkt. 27, at 9). That proposition is true, but the facts in *Palma* are not comparable to the facts here. In *Palma*, the Sixth Circuit found it relevant in overturning a grant qualified immunity at the summary judgment stage that the plaintiff "walked toward [defendant officer] at a normal pace—and it is the jury's job to decide whether this was 'aggressive.'" 27 F.4th at 440. So too, the *Palma* Court found it relevant that "even while approaching [defendant officer], [plaintiff] never got within ten to fifteen feet" of the defendant officer. Here, undisputed record evidence demonstrates that Lieber was within reach of Gomez's gun, i.e. closer than 10-15 feet to Gomez, and running toward him. As such, the Sixth Circuit's holding in *Palma* is not persuasive here.

Further, this Court notes that multiple other circuits have also found that an unarmed suspect charging toward an officer, who gets close enough to that officer to create a reasonable fear that they could take the officer's gun, creates a reasonable fear of serious harm sufficient to grant qualified immunity for the use of deadly force. *See Rambert v. City of Greenville*, 107 F.4th 388, 400 (4th Cir. 2024) ("It is true that [plaintiff] was not brandishing a weapon and, in fact, did not even possess

7

one. But [defendant officer] did not know whether [plaintiff] was or was not armed when [defendant officer] charged at him, at which point [defendant officer] had mere seconds to judge the risk and determine how to respond to [plaintiff's] aggressive and non-compliant approach. In these circumstances, [plaintiff's] lack of a weapon did not make [defendant officer's] use of force unreasonable. . . Also, there was a known weapon at the scene, [defendant officer's] gun. For all [defendant officer] knew, [plaintiff] could have been rapidly and aggressively approaching [defendant officer] to try to take it."); *Carswell v. Borough of Homestead*, 381 F.3d 235, 238 (3d Cir. 2004) ("A reasonable officer would not be expected to take the risk of being assaulted by a fleeing man who was so close that he could grapple with him and seize the gun."); *Wenzel v. City of Bourbon*, 899 F.3d 598, 602 (8th Cir. 2018) ("Given . . . the scant three seconds that he had to observe [plaintiff's] unabated approach towards him, it was reasonable for [defendant officer] to believe that [plaintiff] posed an immediate threat of serious physical harm to him, notwithstanding the fact that [defendant officer] could see that [plaintiff's] hands were empty and the later-discovered fact that [plaintiff] was unarmed.").

    Finally, Plaintiffs make other arguments in their response, namely, that Gomez had weapons and active shooter training which, they argue, made his belief that Lieber posed serious harm unreasonable, and that the residents who had a physical altercation with Lieber were able to subdue Lieber without using force. (Dkt. 27, at 4-7). However, the legal standard does not give the Court an opportunity to second-guess Gomez's split-second decision-making and objective fear of physical harm at this level of granularity, by assessing his training or the measures that the other residents took to restrain Lieber. *See Romero*, 888 F.3d at 177 ("The Supreme Court has warned against 'second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation.'") (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)). Given the totality of the facts and circumstances, and that the Fifth Circuit and other courts have found decisions to use

deadly force to merit qualified immunity in similar circumstances, the Court finds that the Plaintiffs have not met their burden to show the existence of an issue of material fact and finds that Defendant's motion for summary judgment should be granted.[2]

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

Accordingly, the final pretrial conference set for November 14, 2024, and trial set for December 2, 2024, are **VACATED**.

The Court will enter final judgment by separate order.

**SIGNED** on October 29, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs in their complaint pled their excessive-force claim under the Fourth and Fourteenth Amendments. (Dkt. 1, at 3). In their Motion for Summary Judgment, Defendant argues that their claim in fact only sounds under the Fourth Amendment. (Dkt. 25, at 19, citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010)). Plaintiffs, in their response, do not allege any authority giving rise to a Fourteenth Amendment claim, and the authorities they provide analyzed excessive force under the Fourth Amendment. (Dkt. 27). As such, the Court finds it appropriate to grant summary judgment to Defendant as to the Fourteenth Amendment claim as well.